UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

RECEIVED
JAN 02 2025
US DISTRICT COURT
MID DIST TENN

Jon Hall,

    Plaintiff,

V.                                 CASE No. _____
                                 Jury Trial Demand

Frank Strada, in his official capacity as Tennessee's Commissioner of Correction, for failure to correct and supervise agents;

Kenneth Nelson, in his official capacity as Warden of Riverbend Maximum Security Institution, for failure to correct and supervise agents; T.C.A. § 41-1-104, 41-1-204; and TDOC Policy 408.08, VI E. 2;

Corvelli Haynes, in his official capacity as Warden of Security, and his personal capacty for failure to correct and supervise his agents;

Michael Keys, in his official capacity as Warden of Treatment, and his personal capacty for failure to correct and supervise his agents as a defendant in consent defree; T.C.A. § 41-1-104, 41-1-204; TDOC Policy 408.08, VI E. 2;

Pamela Sweeney, in her official capacity as a corporal .and in her personal capacity for failure to follow TDOC policy 502.01 and discriminately imposing excessive force by locking prisoner down without cause;

FNU/ U.S. Beaver, in his official capacity as correctional, administrative Lieutenant, and his personal capacity for failure to correct and supervise his agent C/o Sweeney;

Raymond Moyer, in his official capacity as Disciplinary Board Chairperson, and in his personal capacity for failure to follow TDOC Policy 502.01, and discriminately imposing excessive force by locking prisoner down;

Amber Govan, in her official capacity as Disciplinary Board Chairperson, and in her personal capacity for failure to follow TDOC Policy 502.01, and discriminately imposing excessive force to lock prisoners down

Shanreka Ward, in her official capacity as a corporal, and in her personal capacity for failure to follow TDOC policy 501.01

Steven Burnette, in his official capacity as Unit Manager, for failure to control and supervise his agents, and in his personal capacity;

FNU/ S. Williamson in her official capacity as Unit 2, Counselor, and in her personal capacity;

Djuana Hodges, in her official capacity as a mailroom officer at RMSI, and in her personal capacity, for instigating an attack;

John Skrmetti, in his official capacty as Tennessee Attorney General: and his personal capacity for failure to correct fraudulent records;

Lt. FNU/ Stevens, administrative lieutenant in his official capacity as D-board prosecutor and in his personal capacity for misrepresentation;

    Defendants.                COMPLAINT

## I. INTRODUCTION

    Jon Hall is a person who lives with a mental defect or brain damage, and had a guardian ad litem appointed to him by Federal Court Judge Aleta A. Trauger, in Hall v. Trump, et. al., 3:19-cv-00628. Defendant's know this. Despite this knowledge, Defendants and their agents have engaged in a course of conduct that exacerbated plaintiff's mental health ultimately resulting in him being placed in solitary confinement, in violation of a consent decree that interim Commissioner of Corrections agreed not to do without first consulting Hall's guardian, Brad Maclean, before taking disciplinary action.

Case 3:25-cv-00005    Document 1    Filed 01/02/25    Page 1 of 15 PageID #: 1

Defendants locked Mr. Hall up in solitary confinement conditions for a total of 66 days, without adequate just cause and failed to comply with the terms of a consent decree entered by a Federal Court in Nashville, Tennessee, Judge Trauger, in contemptuous disobedience to a known consent decree.

As a result of defendant's deliberate actions, Mr. Hall has incurred financial losses of income regarding his rock-man job (janitorial duties), and suffered psychological distress regarding the need to engage in time-consuming administrative legal type proceedings to protect his legal interests and desire not to be punished more than once, as a Tenn. Dept. of Corrections prisoner for a single offense, violating the double jeopardy theory of multiple punishments for one offense. State v. Winningham, 958 S.W.2d 740, 753 (Tn. 1997) (Subjected to same offense and twice put in jeopardy of life or limb).

After the consent decree was made, Mr. Hall correctly pointed out: "It's a misconstruction of the law to apply a disciplinary policy, and then a level policy, to impose administrative segregation as another punishment for a single offense, disregarding fundamental double jeopardy principles ...." See: Document 126, PageID 1415, § 41-49 (specifically 43) and Document 134, PageID # 1510, at § 28. Mr. Hall's original sentence was affirmed on a void Madison County Judgment where the alleged offense occurred in Henderson County, and the punishment was declared by the jury to be death, not a TDOC life sentence with multiple punishments by imprisonment, and then the jury's ultimate sentence of death. Ex Parte Lange, 85 U.S. (18 wall.) @ 176 (1873) (Punishment); In re Medley, 134 U.S. 160, 171, 10 S.Ct. 384, 387 (1890) (operated to offender's disadvantage).

The record shows that Mr. Hall was illegally punished by the disciplinary board for fighting, and sentenced to 30 days of lock down. Then, the record shows that Mr. Hall was prosecuted again for fighting by the Unit 2 level review board, and lost his level status for another 3o days additional punishment, until Brad Maclean had Judge Aleta Trauger make an Agreed Order, that nullified the Unit 2, level review boards recommendation for a level change, due to being charged with fighting. The triggering adverse retaliatory action was based on a false allegation of threatening an officer issued by Corporal Pamela Sweeney, and put into motion by lieutenant U.S. Beaver for protected speech, to which other employees then retaliated and culminated into the discriminatory administrative action, dealing with the targeted incident of fighting. In short, Mr. Hall was placed in harm of life and or limb, in an apparent dangerous prison situation creating the necessity of requiring the act of self-defense to protect himself. Then he was treated harshly in an arbitrary and capricious manner, and placed in solitary confinement before TDOC employees contacted Mr. Hall's guardian ad litem as required by the previously entered consent decree. Persons psychiatrically vulnerable to the effects of isolation as Mr. Hall has already shown by court record must be excluded from it. Madrid v. Gomez, 889 F.Supp. 1146, 1265 (Cal. 1995). CITED: Prisoner's self-help litigation manual page 170, n. 65.

Mr. Hall seeks declaratory and equitable relief. Defendants actions are deliberately indifferent to Mr. Hall's right to be treated humanely. Defendants' actions, and those of their agents acting under the color of law under their direction, violate Mr. Hall's rights under the Tennessee Constitution Article 1, §§ 2, 8, 16, 17, 32: Article VI, § 2 of the United States Constitution; the 8th, and 14th Amendments to the United States Constitution; 42 U.S.C. § 1983, and state and federal law as set forth below.

## II. Venue and Jurisdiction

1. Venue is proper in this Court because Plaintiff is incarcerated at Riverbend Maximum Security Institution (RMSI), in this county; each of Defendants actions which constitute the deprivation of Plaintiff's rights under the United States and Tennessee Constitutions and the Tennessee Code have taken place in this county. The events of this Complaint have occurred and will occur in this county.

2. This action arises under Tennessee Constitution Article 1, §§ 2, 8, 16, 17, 32 and Article VI, § 2 of the United States Constitution and the Eighth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983, and state and federal law as set forth below.

3. This case raises a question of interpretation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The district court had jurisdiction under the federal question jurisdiction conferred by 28 U.S.C. § 1331. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and Tennessee Code Annotated § § 29-14-103, and 29-14-113.

## III. Statement of Incorporation

4. All allegations in this Complaint are incorporated in all sections as if fully set forth therein.

## IV. Parties / Plaintiff

5. Plaintiff Jon Hall is a United States citizen and a resident of the State of Tennessee. Mr. Hall is sentenced to death in the County of Madison for a crime allegedly committed in the County of Henderson, Tennessee. Mr. Hall is in the custody of the Tennessee Department of Correction (TDOC), based upon a facially void trial record. Document 153. He is housed at Riverbend Maximum Security Institution (RMSI), Unit 2. He is currently housed in B-Pod-110 at RMSI by the State defendants.

## V. Parties / Defendants

6. The first Defendant Frank Strada is the Commissioner of Correction, a state agency located in Nashville, Tennessee. In his capacity as Commissioner, Mr. Strada is liaible for the safe and humane treatment of all prisoners in the custody of TDOC. Plaintiff sues Commissioner Strada in his official capacity. Commissioner Strada is a state actor, acting under color of state law. His actions are covered by T.C.A. § 4-6-103, and shows he is liable for the management of State Penitentiaries, and those of his agents that violated, Mr. Hall's constitutional and statutory rights as described. Defendant Strada holds office at Rachel Jackson Building, 6th floor, 320 6th Ave N., Nashville, Tennessee 37243-1400.

7. The second Defendant is Warden of Riverbend Maximum Security Institution (RMSI), Mr. Kenneth Nelsen at RMSI, located at 7475 Cockrill Bend Blvd., Nashville, Tennessee, 37209. The prison phone no. is 615-350-3100. Warden Nelsen is a state actor, acting under color of state law. His actions are covered under T.C.A. §§ 41-1-104, and 41-1-204, and shows he is responsible for the management of RMSI, He is responsible for the safe and humane treatment of all prisoners in the custody of RMSI. He is being sued in his official capacity, and in his personal capacity.

8. The third Defendant is, Corvelli L. Haynes, Warden of Security at RMSI, located at 7475 Cockrill Bend Blvd., Nashville, Tennessee, 37209. The prison phone no. is 615-350-3100. Defendant Haynes is a state actor, acting under color of state law. He is responsible for the safe and humane treatment of all prisoners in the custody of RMSI. He is being sued in his official capacity.

9. The fourth Defendant is, Michael Keys, the Warden of Treatment, located at 7475 Cockrill Bend Blvd. Nashville, Tennessee, 37209. Defendant Keys is a state actor, acting under color of state law. Defendant Keys is responsible for the safe and humane treatment of all prisoners in the custody of RMSI, and specifically for failing to act and/or correct and supervise agents under his charge under T.C.A. § 41-1-204, and TDOC Policy 401.08 classification, regarding a breached consent decree he was a party in Hall v. Trump et. al., 3:19-cv-00628. The phone No. is 615-350-3100. He is being sued in his official capacity, and his personal capacity.

10. The fifth Defendant, Corporal Pamela Sweeney was the RMSI Unit 2, (O.I.C.) Officer in charge, located at 7475 Cockrill Bend Blvd., Nashville, Tennessee 37209-1048, who brought false charges of threatening an officer against plaintiff, that was protected speech. The prison phone no. is 615-350-3100. Defendant Sweeney is a state actor, acting under color of state law. She is being sued in her official capacity, and in her personal capacity.

11. The sixth Defendant fnu/ U.S. Beaver, was the administrative Lieutenant, who supported Corporal Sweeney's actions at RMSI, located at 7475 Cockrill Bend Blvd., Nashville, Tennessee, 37209. The prison phone no. is 615-350-3100. Defendant Beaver is a state actor, acting under color of state law. He is being sued in his official capacity, as well as his individual capacity.

12. The seventh Defendant Raymond Moyer, was a Disciplinary Chair Sgt. at RMSI, located at 7475 Cockrill Bend Blvd., Nashville, Tennessee, 37209, who ratified Corporal Sweeney's false charges. The prison phone no. is 615-350-3100. Defendant Moyer is a state actor, acting under color of state law. He is being sued in his official capacity, as well as his individual capacity.

13. The Eighth Defendant Amber Govan, is a Disciplinary Chair Sgt. at RMSI, located at 7475 Cockrill Bend Blvd., Nashville, Tennessee, 37209, ratified a fight charge in absentia without adviser against TDOC Policy 502.01, when plaintiff acted in self-defense, in violation of Uniform Disciplinary Procedures. The prison phone no. is 615-350-3100. Defendant Govan is a state actor, acting under color of state law. She is being sued in her official capacity, as well as in her individual capacity.

14. The ninth Defendant, Corporal Shanreka Ward is the RMSI Grievance Clerk, located at 7475 Cockrill Bend Blvd., Nashville, Tennessee 37209, she interfered in the grievance process, so that the plaintiffs claims were not properly investigated or answered to, in violation of TDOC Policy 501.01. The prison phone no. is 615-350-3100. Defendant Ward is a state actor, acting under color of state law. She is being sued in her official capacity, and her personal capacity.

15. The tenth Defendant, Steven Burnette is the Unit 2 Manager at RMSI, located at 7475 Cockrill Bend Blvd., Nashville, Tennessee, 37209. The prison phone no. is 615-350-3100. Defendant Burnette is a state actor, acting under color of state law. He is being sued in his official capacity, and his personal capacity as the person responsible for Unit 2 agents under his control and duty.

16. The eleventh Defendant fnu/ S. Williamson, is the Unit 2 Counselor at RMSI, located at 7475 Cockrill Bend Blvd., Nashville Tennessee, 37209. The prison phone no. is 615-350-3100. Defendant Williamson is a state actor, acting under color of state law. She is being sued in her official capacity.

4
Case 3:25-cv-00005   Document 1   Filed 01/02/25   Page 4 of 15 PageID #: 4

17. The twelfth Defendant is Djuana Hodge, is a mailroom officer at RMSI, located at 7475 Cockrill Bend Blvd., Nashville Tennessee, 37209. The prison phone no. is 615-350-3100. Defendant Hodges is a state actor, acting under color of state law. She is being sued in her official capacity and personal capacity, for creating a situation that lead to an attack on plaintiff.

18. The thirteenth Defendant is Jonathan Skrmetti, he is the Tennessee Attorney General, who is ultimately responsible for the action of his Co-executive branch defendants in this matter. As the representative of the State of Tennessee, and the addressed personal recipient of document # 153 (Notice of Filing) in Hall v. Trump, et. al., 3:19-cv-00628, he has personal knowledge of the status of the Plaintiff's pertinent claims, and knowledge of the fraudulent misconduct of his agents. He is being sued in his official capacity and his personal capacity under T.C.A. § 8-47-101 et. seq. (Ouster). Because of his awareness of facially void record, failure to correct fraudulent misrepresentation of claims, and vindictive harassment in retaliation to plaintiff's just claims, by agents under his charge.

19. The fourteenth Defendant is FNU/ Stevens, an Administrative Lieutenant, at RMSI, located at 7475 Cockrill Bend Blvd., Nashville Tennessee, 37209. The prison phone no. is 615-350-3100. Defendant Stevens is a state actor, acting under color of state law. He is being sued in his official capacity and personal capacity for failure to stop Sgt. Govan trying Hall in absentia without guardian.

**VI. Statement of Facts** (Incident # 1; retaliation)

20. On April 27, 2024, Corporal Pamela Sweeney started her work day off at RMSI yelling in Unit 2, in A-pod at 6:30 - 6:40 A.M., informing the prisoners, that Warden Zachary Pounds was not on duty anymore and replaced by the Assistant Commissioner for the Department of Corrections.

21. After the announcement about the Warden was made, Nick Johnson # 421296 asked Ms. Sweeney whether or not she was going to run the recreation program today?

22. Corporal Sweeney started complaining they did not send her down enough officers to run it. See: Jones v. Mays, 3:19-cv-00666, Document 77-1 to 77-3, PageID # 1264-1327, for the following ten exhibits already filed and specified on record for the Court's consideration addressing these facts.

23. Nick Johnson asked her to call the Shift captain to get someone down here to run the rec-yard, because of an ongoing problem with Unit 2 staff not wanting to run the rec-yard as per policy.

24. Corporal Sweeney got loud and told Nick Johnson, that she wasn't going to call the shift captain because they know how many people they sent her down to run the Unit. See: e.g. **EXHIBIT 1,** (Nick Johnson's May 4, 2024; Affidavit of complaint). **Document 77-3, PageID 1289.**

25. Nick Johnson requested that Corporal Sweeney call Captain Jones to tell them to send someone down (as per grievance # 24-0089/00364960), she was very confrontational. She was very loud and extremely agitated, and said quit arguing with me several times in a loud voice, and I'm not going to do it. See: e.g. **EXHIBIT 2,** (Nick Johnson's grievance # 24-0089/00364960; regarding the Unit 2 rec-yard). **Document 77-3, PageID # 1291-1300.**

26. Approximately 10:30 A.M., Cpl. Sweeney was doing her security checks, and when she got to plaintiff's door at U-2, A-208, Mr. Hall asked Corporal Sweeney to let him go to the law library. See: **EXHIBIT 3,** Memo from Unit Manager, Burnette (May 9th 2024; Subject: Unit 2 Schedule).

## COUNT: 1 ABUSE OF FORCE ON ADA PRISONER VIOLATION OF 42 U.S.C. § 1983 FALSE CHARGES / PLACED IN SEGREGATION / BEYOND SCOPE OF DUTY: CAUSED BY DENIAL OF DUE PROCESS (AGAINST BEAVER, SWEENEY, AND MOYER)

27. During the 10:30 A.M. confrontation between Mr. Hall, and Corporal Sweeney, she got loud and confrontational with the plaintiff, and asked him: why didn't he go to the law library at the 8:00 A.M. call out. This entire event should be recorded on RMSI U-2-A-pod video surveillance equipment.

28. Mr. Hall informed her that he was not informed of that message, that there was a call-out, and that he wanted to go during the 10:30 A.M. call-out. Corporal Sweeney invidiously discriminated against Mr. Hall denied him the same rights as other similarly-situated inmates to go to the library. See: e.g. **EXHIBIT 4,** (May 4, 2024; Affidavit of Jonathan Stephenson). **Document 77-3, PageID 1302.**

29. When Mr. Hall tried to explain his constitutional rights to Corporal Sweeney and informed her that she should not be promulgating and enforcing unwritten rules, during his encounters to make her cognitively aware of Unit 2 prisoner rights, things got loud and she said "you are done." Later she even refused to let Mr. Hall exercise his right to go to the rec-yard after the 12:00 noon count cleared. See: e.g. **EXHIBIT 5,** (April 28, 2024; S/S Affidavit of Henry Lee Jones # 455040). **PageID 1303-04.**

30. At 1:15 P.M., a guard with a shirt tag US Beaver, (Tattooed behind ear like a prison number) came down and spoke to Mr. Hall at his door, and asked him what happened?

31. Mr. Hall explained to Lieutenant Beaver that Corporal Sweeney was not following TDOC policy, by not running the Unit 2 court ordered programs, as per the settlement agreement that Interim Commissioner, Lisa Helton, made between her and Mr. Hall's court appointed Guardian Ad Litem, Mr. Bradley A. Maclean on 3/25/22, in Jon Hall v. Donald Trump et. al., 3:19-cv-00628, document 123-1, PageID 1326-1349. See: e.g. **EXHIBIT 6** (3/25/22; settlement agreement). **PageID # 1305-10.**

32. Plaintiff claims that defendants actions or failure to act amounted to a deprivation of Mr. Hall's rights under the consent decree which grant the plaintiff a right to reasonable protection from abuse of force, and deprivation of liberty, and the necessities of life (such as status) as provided by the Eighth Amendment to the United States Constittion. The Defendant's acts or omissions were deliberately indiffent to Mr. Hall's dignity, and the punishment imposed was not justified under the civilized standards of humanity, and decency that violated the due process of law, under the consent decree. Smith v. Sumner, 994 F.2d 1401, 1406 (1993) (Liberty interest created by consent decree).

Here, the Plaintiff states that Lieutenant Beaver started to leave the April 27, 2024 1:15 P.M. encounter at Mr. Hall's cell door and then turned around and took adverse action by informing Mr. Hall he was being wrote-up for threatening an employee. This charge was unfounded protected speech. Defendant's actions used segregation as a tool to impose unecessary, unjustified punishment and such use of force deprived plaintiff of his fundamental interest in being secure against cruel and illegal punishment as guaranted to him under the Eighth Amendment to the United States Constitution.

33. When Mr. Hall asked Lieutenant Beaver: What was the threat, he could not tell him, and said that he will find out. Thus, Mr. Hall was maliciously retaliated against in the foregoing manner (without any objective probable cause) for reporting Corporal Sweeney's invidious discrimination regarding the assertion of Mr. Hall's protected speech and denied him the equal protection of the law.

34. At 2:45 P.M., on April 27, 2024, Mr. Hall gave the new Unit Manger, Mr. Burnette a copy of his forgoing typewritten statement regarding what occurred in unit 2 that morning through the afternoon events (similar to that attached to disciplinary report), but Mr. Burnette failed to correct the deprivation of Mr. Hall's expressed rights, and focused on Nick Johnson's Unit 2 rec-yard complaint.

35. At 3:00 P.M., on April 27, 2024, Cpl. Sweeney finally ran rec-yard for B-C level inmates.

36. On April 28, 2024, at 01:15 A.M. Mr. Hall was served a copy of the write-up (Incident # 1623196), that failed to show a claim under TDOC Policy 502.01, (Uniform Disciplinary Proc.) § VI., L. f, [1], at pg. 18-19. See: **EXHIBIT 7** (4/27/24 write-up; incident 01623196, claiming in part: "Inmate Hall became upset and started to threaten Corporal Sweeney ... by stating **"You better have a good attorney because you cannot do this."** Inmate Hall is charged with threatening staff. **PageID # 1311.**

37. On April 29, 2024, Mr. Hall's retaliation grievance was submitted, that properly alleged that Hall was wrongfully charged with threatening an employee, because Corporal Sweeney arbitrarily and discriminatory retaliated against him by denying him access to the law library at 10:30 A.M. call-out, to conceal the violation. COMPARE; Winston v. Coughlin, 789 F.Supp. 118, 120-21 (W.D.N.Y. 1992) (Holding officers filed fabricated reports to conceal Eighth Amendment violations, stated a claim).

38. On May 1, 2024, at approximately 2:40 P.M. Mr. Hall was wrongfully found guilty by Disciplinary Chairperson Raymond Moyer, in spite of having actual knowledge of the law and facts in this matter, and imposed a (5) day punitive sentence on Mr. Hall in front of inmate Terry King # 103306, and assessed the punishment as five days (time-served).

39. On May 6, 2024, acting warden, Clendenion **dismissed incident report 01623196,** stating: "dismissed per acting warden Clendenion outburst from inmate deemed **non-threatening** but **an expression of this inmate's rights."** See: **EXHIBIT 8** (Warden Clendenion's dismissal). **PageID 1312.**

40. Following the encounter with Corporal Sweeney on April 27, 2024, starting at about 10:30 A.M., until meeting with the disciplinary board chairperson on May 1, 2024, at 2:18-2:43 P.M., for a formal disciplinary hearing held at his cell door at U-2-A-208. Mr. Hall was denied his:

>     a. substantive procedural due process rights to be permitted to continue his/her normal duties pending the hearing, in violation of TDOC Uniform Disciplinary Procedures, Policy 502.01 VI., F., 1, 2 (a)-(c). See: e.g. **EXHIBIT 9** (Richard Odom's inmate pay grievance, attachment # 2; Odom's Rock-man pay for May-June 2024).
>
>     b. The record shows that Mr. Hall was held in isolation, and denied $ 2.88 from his rock-man pay in June as compared to inmate Mr. Richard Odom # 215639, thus seriously impacting both his ordinary liberty interests, and property interests, caused by the deliberate indifference and outrage against a protected prisoner's expressed first amendment constitutional rights. See: e.g. **EXHIBIT 10** (Hall's Rock-man pay for May-June 2024; to obtain necessities of life); and by denying him his:
>
>>         (i) normal communal worship service held on Sunday April 28, 2024;
>>         (ii) his assigned Education for Christian ministry program;
>>         (iii) daily recreation privileges on 4/27/24-5/1/24 (Policy 503.03); and
>
>     c. Thus, Mr. Hall was basically: intentionally, purposely, wantonly, maliciously, cruelly, and unusually cited and punished for exercising his protected constitutional rights, in violation of TDOC disciplinary policies and procedures, and T.C.A. § 39-16-403, without the formal precondition of finding or adjudication of guilt.

7

Based on the retaliation over Mr. Hall's right to present a justification defense about Corporal Sweeney's abuse of process (false charges), and excessive use of force / confinement (abuse of power), and wanton infliction of malicious punishment beyond the scope of her power and authority. Mr. Hall's reasonable expectation of substantive procedural due process righs to the enjoyment and equal right to the protection of the law, was breached in violation of Mr. Hall's First, Fourth, Fifth, Eighth, and Fourteenth U.S.C.A. Constitutional Amendments.

### VI. Statement of Facts (Incidnt II, retaliation)

41. On July 29, 2024, Mr. Hall was talking to Hector at the table. So the incident had to have occurred sometime before 11:00 A.M., because Hall was not locked-down before the dispute between Hall and Tony occurred. TDOC Policy 502.01 VI. 5. f. 1 (Dismiss / error; Pg. 18-19 of 36).

42. According to disciplinary incident report # 01635580, the first page reported that the incident occurred on 07/31/24 at 12:13, not on July 29, 2024. On the 2nd page of the disciplinary, the report's description states in part: "Upon further review of the Valerus camera system, it was confirmed on July 29, 2024, at 12:13 P.M. that inmate John Hall # 238941 assigned to unit 2, alpha pod, cell 210 and Tony Carruthers # 139604 assigned to unit 2 alpha pod, cell 205 were observed fighting on the top tier of unit 2, alpha pod." In that light, Lt. Stevens created a false report misrepresenting the actual time the incident occurred, violating T.C.A. § 39-16-502(C). See (Incident report # 01635580).

43. The videotape will show that Jon Hall encountered a limited walkway caused by the placement of the roll around telephone, when Mr. Hall passed by the cell of TDOC inmate Tony Carruther's # 139604. Mr. Hall was then compelled to react quickly in self-defense after he passed by Tony, because he responded in an unexpected manner (without any valid provocation), by following after Mr. Hall in a fast paced penguin like stroll and puffing up his chest and uttering racial slurs about being tired of white boys shit (or words to that effect). In short, Tony exhibited signs of intent to cause a dangerous confrontation without correctional officers present, necessitating reasonable self-defense actions, until the situation was diffused. NOTE: Self-defense theory attached to write-up.

### COUNT: 2 - ABUSE OF FORCE ON ADA PRISONER VIOLATION OF 42 U.S.C. § 1983 FALSE CHARGES / PLACED IN SEGREGATION / BEYOND SCOPE OF DUTY: CAUSED BY DENIAL OF DUE PROCESS (AGAINST HODGES, GOVAN, STEVENS)

44. Based upon information and belief, C/O Djuana Hodges was the person that reported the incident to staff on July 31, 2024. Based upon the information I received **on July 31, 2024, it was explained to me that C/O Hodges pulled out of the mailbox a letter** addressed to her containing a "snitch note," with the information about the fight in which she read it aloud to all the inmates in unit 2, B-pod on July 31, 2024, that morning she picked up the daily mail. I was told about the snitch note before I was locked down. It was told to me by my new B-pod neighbors, that the guards fingered **I/M Mike Rimmer # 110874** as the white guy allegedly seen on the B-pods cameras placing the "snitch note" in B-pods mailbox (Mike denied placing this in the box to Mr. Hall).

45. It is inferred by Mr. Hall, because of his knowledge that Ms. Hodges has at least a casual friendship relationship with **Tony Carruthers sister who works for the Shelby County Sheriff's Department, and conducts I/M transfers from Shelby County to intake** was the motivating factor behind

8

the retalitory **attack carried out by Tony Carruthers**. Tony knew that Ms. Hodge was the subject of the current mailroom (grievance # 24-0239/00367429 investigation initiated by Jon Hall).

46. Mr. Hall had just requested that his counselor, **Ms. Jessica Wilson** (Replaced by S. Williamson) track down the due response to grievance # 24-0239/00367429, involving Ms. Hodges on the morning of July 29, 2024 before Tony Carruthers decided to attack Mr. Hall, leading Mr. Hall to believe, that the attack was motivated by RMSI staff was an instigated act of retaliation for filing grievances. See: (Grievance # 24-0239/00367429).

47. It is further believed by Mr. Hall, that **Ms. Hodge** took adverse action and reported the wrong date on the incident because the **"snitch note"** that Ms. Hodge turned-in **was lacking the necessary factual information on the date and time. It is further suggested that Tony Carruther's had inside information** that the cameras in A-pod were inoperative, or why else would he attack Mr. Hall in front of the cameras, unless he wanted to be caught as a check-in move (after spending decades behind the door in restrictive housing).

48. The information provided to staff on August 2, 2024, to the Unit Review Panel Hearing (completed on TDOC CR-2937 form), gave Lt. Stevens just enough facts to amend the description of the incident # 01635580 on the second page to appear as if he had reviewed the cameras to create the false report to state in-part: "Upon further review of the Valerus camera system, **it was confirmed on July 29, 2024, at 12:13 P.M.** that inmate John Hall assigned to unit 2, alpha pod, cell 205 were observed fighting on the top tier of unit 2, alpha pod." Compare: e.g. Gibbs v., Mays, 3:23-cv-01047 (M.D. Tn. Document 1, PageID # 6, § ("27. Following the incident, Lt. Stevens made physical copies of the videos related to the incident on DVD but only requested the unit 4 Delta Pod video, intentionally excluding the video of the assault on Plaintiff by the correctional officers. This incomplete and misleading video was provided it to Assistant Warden Lewis. Warden Lewis in turn provided those tapes to Warden Mays.") **REFERENCE: Grievance # 24-0239/00367429, page [23].**

49. **Mr. Hall's superior firsthand knowledge of the facts** show that the incident in question **had to have occurred sometime before 11:00 A.M.; (not the 12:13 afternoon time listed on the incident report)** Because, Mr. Hall was not locked down before the attack or count-time. See: May 9, 2024 memo from Unit Manager, Steven Burnette 11:00-12:00 is lock-down for count. REFERENCE: Jones v. Mays, 3:19-cv-00666, Document 77-3, PageID 1301.

50. The facts Hall provided to staff on August 2, 2024 during the Unit Review Panel Hearing (completed on TDOC CR-2937 form), **based on the word "brunch"** (late breakfast / early lunch), was too vague for Lt. Stevens to understand, and his misstated facts at 12:13 noon time listed in the description of the incident report, alerted Mr. Hall to the fact that Mr. Stevens does not speak truth, in accordance to TDOC Policy 502.01, VI. C. 3. (Page 5 of 36). NOTE: See: e.g. The August 2, 2024 Unit Panel Review Hearing facts on TDOC Form # CR-2937 form, for impeachment verification.

51. Counselor S. Williamson, failed to correct the plaintiff's disciplinary history regarding the self-defense incident # 01635580. The agreed order dated Oct. 1, 2024, by judge Trauger said: plaintiff would not be further charged. Because she said; Jen Brenner said "let the conviction stand."

52. Therefore; **Notice;** BREACH: according to the request shown on the face of the (Incident report # 01635580), the **served disciplinary report** Jon Hall signed and dated states in pertinent part: (# 2. "I want a videotape of U-2-A-208 of the incident while under surveillance"; and # 3. *"I want confirmation of contacting my Guardian Ad Litem as per settlement agreement Doc. 123-1 Hall v. Trump, 3:19-cv-00628 w/in 5 days.")* This grievance # 24-0239/00367429, marked to the left as **page [16] demonstrates that TDOC Sgt. Govan was duly notified of the duty to contact the guardian within (5) days, before she had personally breached the consent agreement.** OTHER: grievance # 24-0239/00367429, was *submitted as an exhibit to Mr. Hall's document 161* (Motion to Alter and Amend October 1, 2024 Order - Document 160) under the last paragraph on page 2, which begins WHEREFORE, ... and ends by saying See also: attached grievance # 24-0239/367429.

### VII. DEPRIVATION: (Incident # 2)

53. Hall was denied his:
   a. substantive procedural due process rights to be permitted to continue his/her normal duties pending the hearing, in violation of TDOC Uniform Disciplinary Procedures, Policy 502.01 VI., F., 1, 2 (a)-(c); based upon a write-up that contained material errors of fact and should have been dismissed sua sponte, in violation of TDOC Policy 502.01 VI. L. 5. f. 1. (Pages 18-19 of 37; Dismiss for errors);

   b. The record shows that Mr. Hall was held in isolation, and denied (2) months income from his rock-man pay from August 1, 2024 to October 1, 2024, thus seriously impacting both his ordinary liberty interests, and property interests in the necessities of life, caused by the deliberate indifference and outrage against a protected prisoner's expressed first amendment constitutional rights, to protect himself by grievances, and administrative procedures. Thus, denying Hall from his:

   (i) normal communal worship service;
   (ii) his assigned Education for Christian ministry program;
   (iii) daily recreation and group meal from 7/31/24 to 10/1/214; and

   c. In short, Mr. Hall was basically: intentionally, purposely, wantonly, maliciously, cruelly, and unusually cited and punished without representation and tried in absentia, for exercising his protected constitutional rights, in violation of TDOC disciplinary policies and procedures, and T.C.A. § 39-16-403, without any formal precondition of finding or adjudication of guilt, by a learned or fair tribunal.

### COUNT 3: RETALIATION DENIAL OF RIGHT
### TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES

54. Corporal Shanreka Ward, is at least a second generation paper-pusher at RMSI following after her Mother, Dee Scott. Defendant Ms. Ward follows in her mother's footsteps, and is currently the grievance chairperson. It was Corporal Ward that counselor Jessica Wilson contacted regarding Mr. Hall's grievance on July 29, 2024, that sparked the adverse actions against Mr. Hall for filing grievances. The proof will show that she routinely takes adverse action when she : (1) fails to pickup inmate grievances daily (as required by TDOC policy as stated by Warden Mike Key's videotaped deposition in Hall v. Trump et. al., 3:19-cv-00628); to deny prisoner's adequate timely procedures for filing in conformance with grievance deadlines. The grievance procedure at RMSI is an irreparably broken procedure by all the policy violations that take place under her charge of grievances (audit).

## COUNT 4 - SUPERVISORY LIABILITY - FAILURE TO TRAIN / SUPERVISE

55. The prison through its policymakers, has a clear and persistent pattern of failing to discipline officers for constitutional violations or has policies that are insufficient to protect the constitutional rights of individuals as those policies are applied and understood within the prison. This is evident from the fact that six officers violated Plaintiff's clearly established rights and no officers were punished despite the videotaped evidence of these facts that should exist of these documented encounters.

56. The prison has (3) different wardens to perform the various tasks, i.e. Warden Nelsen, Warden Haynes, and Mike Keys defendant in the original consent decree, and through all these quasi policymakers, have ratified the individual defendant's actions by refusing to investigate the incidents that is subject to this lawsuit, and all three wardens have failed to correct several policy violations that have been deemed non-grievable by Shanreka Ward, and should have been legitimately investigated and followed up on, and corrected on appeal.

57. Defendant Warden(s) Nelsen, Haynes, and Keys was, at all times material to this cause, the wardens of this prison. Defendants either established policies or well-established customs or knowingly acquiesced in the establishment of policies or well established customs that were the direct and proximate cause of Plaintiff's deprivation of his constitutional rights, by rubber-stamping administrative records. As a result, Defendant Keys is ultimately the warden of treatment and is personally liable under section 1983, after being listed as a defendant in the original actions consent decree.

58. Defendant Warden(s) actions have caused the prison to adopt a custom or practice of looking the other way, while allowing their agents misapply segregation as a punishment tool without clearly establishing the guilt of individual prisoners before subjecting them to legitimate punishment for wrongdoing in the enforcement of said policies or customs, allowing excessive force to occur to the prisoners.

59. Defendant Nelsen failed to provide adequate training and/or supervision to his correctional officers regarding use of force. Defendant Nelsen has a non-delegable duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures to be carried out by the prison's correctional officers.

60. As a direct and proximate consequence of the failure on the part of the Defendant Warden(s) to properly develop, implement, and otherwise devise a constitutional policy of adequate training and/or supervision on Tennessee's death row administered by the Prisons correctional officers and counselors, plaintiff was deprived of his civil and constitutional rights.

61. The failure of Defendant Nelsen to provide adequate and proper training and supervision, as evidenced by the actions of so many officers in this matter, and to provide adequate and proper training and supervision relating to the use of solitary confinement as a punishment is so grossly negligent that it amounts to a deliberate indifference and disregard for the civil and constitutional rights of Plaintiff.

62. RMSI Officials are presently tolerating and have a custom of tolerating severe constitutional abuses against prisoners such that even the Attorney General's office present false and misleading policies to cover up the abuses (as confirmed by document 161 (Two different TDOC 503.03 policies).

In this instance, Defendant Jonathan Skrmetti has failed to investigate, reprimand, or correct said abuses and ensured that the correctional officers Defendants still have access to harm and intimidate Plaintiff such that correctional officers, and attorney's alike believe that they can overlook and violate those rights with impunity, breaching attorney client trust.

63. Here, even the grievance chairperson at RMSI out of retaliation against prisoner's for filing legitimate grievances, deems them inappropriate for not timely filing them, when mathematical calculations precisely prove otherwise, just to interfere with the proper presentation of evidence. **See: e.g. grievance # 24-0239/00367429.** An audit will show that Ms. Ward almost always deems every legitimate grievance (inappropriate to grievance procedure). To deny inmates a hearing, and make almost every claim presented, an ipse dixit claim, without a chance to lay a chain of custody foundation, or grant an opportunity to present rebuttal arguments. Holloman, 835 S.W.2d 42, 46 (Tn.App. 1992); Kilpatrick, 52 S.W.3d 81, 87 (Tn.Crim. 2000).

64. From Mr. Hall's own perspective, and from years of hearsay by other prisoner's, that almost every prisoner can testify to this broken process, as found and expressed by Judge Trauger, in the matter of Stephen Hugueley v. Tony Parker, 2020 WL 4753845 * 5 (M.D. Tn. 08/17/20) (citing Ross v. Blake, 136 S.Ct. @ 1859 (2016); TDOC/RMSI grievance procedure is a dead-end street). Grievants are routinely denied an opportunity to introduce evidence, or chance to put forth any rebuttal claims.

65. Thereby leaving the prisoner with only one option available to remedy to a the situation, i.e. the psychologically distressful hassle and expense of filing more paper work, to file a set of in forma pauperis forms, and pay court costs, to allow defendant's more of an opportunity to make a prisoner suffer through the delay on unconstitutional deprivations, that could have been legitimately resolved and corrected by defendant's at the earliest opportune time, as indicated by TDOC policy.

66. Thus, requiring the prisoner to seek legal help to exhaust the prisoner's remedy through the United State's judicial system, for all intents and purposes, to generate revenue for the Corporation of the United States of America, or chill a reasonable prisoner's exercise of his first amendment rights, in violation of Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

67. The Plaintiff incorporates by reference each and every claim presented in the preceding factual sections as set forth herein substantiated with a timely file grievance to address this his cause of action. **See: e.g. grievance # 24-0239/00367429.**

### COUNT 5: EIGHTH AMENDMENT
### (CRUEL AND UNUSUAL PUNISHMENT)

68. In an effort to show the plaintiff's second claim, regarding the Atypical and significant hardship claim addressing the Cruel and Unusual Punishment that he has endured; Prisoner Jon Hall, shows the court his relevant public medical record facts (already filed in Jones v. Mays, 3:19-cv-00666, Document 77-3, PageID 1315-1327), showing brain damage caused by solitary confinement.

### COUNT 6: FOURTEENTH AMENDMENT

69. Plaintiff incorporates by reference each and every allegation contained in the preceding factual paragraphs set forth herein, to state a cause of action.

70. Defendant's have deprived Mr. Hall of a liberty interest without due process of law by denying him meaningful and timely periodic review of his continued long-term and definite commitment to solitary confinement, by denying him meaningful notice of what he can do to free himself of these extreme restrictions and by denying him rights to appeal the Warden's arbitrary decision, in violation of the 14th Amendment to the United States Constitution.

71. The conditions and the duration of Defendants' confinement of Mr. Hall constitutes an atypical and significant hardship as compared with the ordinary incidents of prison life on death row for (3) basic reasons: (a) the exceedingly harsh and isolated conditions of solitary confinement; (b) the lengthy duration of solitary confinement; and (c) cumulative adverse physical and psychological effects from confinement.

72. Mr. Hall has been held in the extreme conditions described above for almost 15 years. Upon information and belief, this extended commitment to solitary confinement is atypical in comparison to the ordinary disciplinary and mandatory administrative segregation imposed only on Tennessee's death row under TDOC Policy 503.03, but not placed on Tennessee's general population.

73. Because indefinite commitment to solitary confinement constitutes a significant and atypical hardship, Mr. Hall is entitled to meaningful notice to his guardian, and instruction of how he can alter his condition and gain adequate relief, as well as meaningful and timely periodic reviews and appeals (with aid of counsel); to determine whether his situation truly warrants the sentence he has done in isolation.

74. Defendants have denied and continue to deny any such notice or meaningful review by: (1) failing to provide Mr. Hall with notice of what he can do to get relief from the conditions of his confinement: (2) Plaintiff was placed in solitary confinement until he exhausted his administrative remedies; and (3) TDOC / RMSI failed to provide meaningful appeals, rendering Level classification system and periodic reviews he receives substantively and procedurally meaningless.

75. Defendants also violate Mr. Hall's due process rights by retaining him in conditions that amount to atypical and significant hardship without legitimate penological interest, as this detention occurs without reliable evidence; without any or relief from the harsh conditions of solitary confinement, and will present a danger of safety and security to Mr. Hall's sanity. See e.g. Madrid v. Gomez, 889 F.Supp. 1146, 1265 (1995) (Sanity is a necessity of life): and Arnold v. Lewis, 803 F.Supp. 246, 254 (1992) (Lock-down is not a treatment for Schizophrenia).

## VIII. PRAYER FOR RELIEF

76. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Mr. Hall's class suffered and continue to suffer irreparable injury as a result of unlawful acts, omissions, policies, and practices of defendants, as alleged herein, unless he is granted the relief he requests. Friedman, 573 F.Supp.3d @ 1230-31 n.7 (2021). The need for relief is critical because the rights at issue are major under the U.S. Constitution, and can only be resolved by Defendant Strada

WHEREFORE, Plaintiff requests this Court grant him the following relief:

a. Declare Defendants' policies and practices of committing Plaintiff's to the affects of both a disciplinary policy and then a level program policy to impose an indefinite solitary confinement punishment under the multiple punishment for one offense conditions, unconstitutional as applied, and stated in this Civil Rights Complaint, violates plaintiff's prisoner class, 5th, 8th & 14th United States Constitutional Amendment rights.

b. Issue service of process and serve the Defendants to begin the process of injunctive relief ordering Defendants to present a real plan to the Court within 30 days of the issuance of the Court's order providing remedy for:

i. alleviation of the multiple punishment conditions of Plaintiff's class confinement so that, for example, Plaintiff is allowed normal visitation, and physical access to the law library; and no longer punished by isolation; nor sensory deprivation, or environmental deprivation, and lack of social and physical human contact.

ii. meaningful review and right to appeal decision regarding continued need for Plaintiff's solitary confinement within 5 days before any disciplinary action is taken;

iii. meaningful review of Plaintiff's classification (CAF level rating) in future treatment plans; and

iv. adequate medical care and food to the Plaintiff and treatment of his health care issues and the provision of adequate mental health treatment; and just compensation, for his pain and suffering.

c. Exercise the Court's discretion to provide funds, with the funds available to this court or through combination with the Federal Public Defender's Office for the Middle District of Tennessee, so that Mr. Hall can engage appropriate experts, including a psychiatrist and physician;

d. Award Plaintiff compensatory & punitive damages as fixed at trial;

e. Award punitive damages and the costs of this suit and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law under Rule 54 of the Federal Rules;

f. Retain jurisdiction of case until Defendants comply with the orders; and

g. Award any further relief as the Court deems just and proper, for defrauding the Federal Court, by misrepresenting that Madison County had subject-matter jurisdiction to create a void judgment form over a Henderson County indictment, without following the written laws under Tennessee Rules of Court, Rules 18, 21, 23, and 43, and Tennessee Codes T.C.A. §§ 20-4-203; and T.C.A. § 20-4-209.

Respectfully submitted,

*Jon Douglas Hall*
Jon Douglas Hall
RMSI Unit 2, B-110
7475 Cockrill Blvd.
Nashville, Tennessee 37209-1048

"I *Jon D. Hall*, **DECLARE UNDER THE PENALTY OF PERJURY,** that the foregoing information is true and correct, and based upon first hand knowledge." ***Carter v. Clark***, 616 F.2d 228 (5th Cir. 1980) **(28 U.S.C. § 1746;** declaration under the penalty of perjury).

**EXECUTED ON:** 23rd day of December 2024. **Signature:** *Jon Douglas Hall*

Jon Hall # 238941
RMSI U-2-B-110
7475 Cockrill Bend Blvd.
Nashville, Tennessee 37209-1048

RECEIVED
JAN 02 2025
US DISTRICT COURT
MID DIST TENN

Office of the Clerk
U.S. Federal Courthouse
719 Church Street, Suite 1300
Nashville, Tennessee 37203

LEGAL MAIL



