IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JON HALL, #238941, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:25-cv-00005 |
| | ) | |
| FRANK STRADA, et al., | ) | JUDGE RICHARDSON |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jon Hall, a state inmate on death row at the Riverbend Maximum Security Institution (RMSI), filed a pro se civil rights complaint against fourteen defendants (Doc. No. 1, "the Complaint") claiming, *inter alia*, retaliation under the First Amendment and cruel and unusual punishment under the Eighth Amendment.

The Court granted Plaintiff leave to proceed as a pauper. (Doc. No. 11.) Shortly thereafter, Plaintiff filed a new "Complaint for Retaliation, Eighth Amendment Violations and Civil Rights Violations and State Law Claims." (Doc. No. 12, "the Amended Complaint".) The case is before the Court for an initial review under the Prison Litigation Reform Act (PLRA). 28 U.S.C §§ 1915(e)(2), 1915A.

## I. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" or any portion of it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.

§ 1915A; *see also* 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether a prisoner complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

**B. Background**

1. <u>Plaintiff's prior lawsuit</u>

As recounted in the Complaint (Doc. No. 1 at 1), in a prior case in this District, *Hall v. Trump, et al.*, No. 3:19-cv-00628 (M.D. Tenn.) (Trauger, J.), Plaintiff was appointed counsel and a guardian ad litem, and those representatives settled the case against the Tennessee Department of Correction (TDOC) in March of 2022. (*See id.*, Doc. No. 123-1.) The settlement involved

"substantial programmatic changes" to the way in which TDOC allows for its death row inmates' socialization, as well as the establishment of protocols for treatment of Plaintiff's mental health needs at RMSI under an "Individualized Treatment Plan." (*Id.*) It also provided that, "[i]n the event that Mr. Hall is charged with a disciplinary infraction or experiences a change in his program level,"[1] his counsel and guardian ad litem must be notified within five days. (*Id.*, Doc. No. 123-1 at 5.) Judge Trauger dismissed the case pursuant to the parties' joint motion, while "retain[ing] jurisdiction to hear any claims that the defendants have breached the Settlement Agreement." (*Id.*, Doc. No. 124.)

2. Allegations of the original Complaint and related filings

*a. The first incident*

The Complaint[2] alleges that on April 27, 2024 at approximately 10:30 a.m., Corporal Pamela Sweeney came to Plaintiff's cell door while doing security checks, and Plaintiff asked her for permission to go to the law library. (Doc. No. 1 at 5.) Sweeney asked why Plaintiff did not go to the law library at "the 8:00 A.M. call out," and Plaintiff responded that he did not know that there had been an 8:00 a.m. call out, and that he wanted to go during the 10:30 a.m. call out. (*Id.*) Sweeney denied the request. Plaintiff objected to this denial, and "things got loud." (*Id.* at 6.) Later that day, Lieutenant Beaver came to Plaintiff's cell to ask him what happened during the morning

[1] Per TDOC Policy 503.03, inmates sentenced to death are assigned to program level A, B, or C, representing a graduated system of access to privileges whereby a death-sentenced inmate starts at level C and may, with demonstrated good behavior, graduate to level B, and then to level A (where the most privileges are awarded), subject to being demoted one or two levels in the event of a disciplinary conviction. (*See* Case No. 3:19-cv-00628, Doc. No. 123-1.)

[2] Consistent with the discussion above regarding the applicable legal standard, the alleged facts from the Complaint referred to below are accepted as true and therefore are stated without qualification (i.e., without prefatory language such as "Plaintiff alleges" or "the Complaint alleges").

incident with Sweeney. After hearing from Plaintiff, Beaver informed him that he was being written up for threatening an employee. (*Id.*)

The next day, Plaintiff was served with a copy of the disciplinary charge, which alleged that he had threatened Sweeney when he stated, in response to being denied access to the law library, "You better have a good attorney because you cannot do this." (*Id.* at 7.) Plaintiff responded by filing a grievance alleging that the disciplinary charge was retaliatory. (*Id.*) On May 1, 2024, Plaintiff was found guilty at his disciplinary hearing and received a "(5) day punitive sentence … assessed … as five days (time-served)." (*Id.*) However, on May 6, 2024, acting warden Clendenion dismissed the matter after deeming Plaintiff's "outburst … non-threatening but [rather] an expression of this inmate's rights." (*Id.*) During his pre-conviction segregation between April 27 and May 1, Plaintiff was unable to work his prison job as a "rock-man" or to attend one Sunday worship service, his "Education for Christian ministry program," and his daily recreation. (*Id.*)

*b. The second incident*

On July 29, 2024, Plaintiff and another inmate, Tony Carruthers, fought after Carruthers behaved in a threatening manner by "following after [Plaintiff] in a fast[-]paced penguin like stroll and puffing up his chest and uttering racial slurs…." (*Id.* at 8.) Before the fight occurred, Plaintiff had asked his counselor for an update on a grievance he had filed involving mailroom officer Djuana Hodges. (*Id.* at 9.) The fight ended without any correctional officers' knowledge or involvement, but it was subsequently reported by Officer Hodges, the subject of Plaintiff's outstanding grievance, based on a "snitch note" delivered to her mailbox by a third inmate. (*Id.* at 8.) After a review of security video confirmed that Plaintiff and Carruthers had fought, (*see* Doc. No. 1-4 at 11), a disciplinary board hearing was held in early August 2024, with Sgt. Amber Govan presiding and Lt. Charles Stevens pressing the charge; Plaintiff was convicted *in absentia* on the

charge of fighting, (*id.* at 15), and was punished by being "placed on Level B for 6 months." (Doc. No. 1-2 at 42.) However, on October 1, 2024, Judge Trauger entered an order in case number 3:19-cv-00628 reflecting the following agreement of the parties:

> The disciplinary board hearing held on August 9, 2024, did not comply with the requirements of the Settlement Agreement of March 25, 2022. As a result, Plaintiff shall be returned to program Level A immediately and will not be further charged for the July 2024 infraction. Beginning January 1, 2025, and every quarter thereafter, Tennessee Department of Correction shall provide Plaintiff's progress notes for the treatment referenced in Paragraph 15 to Plaintiff's attorneys and guardian ad litem. This Order resolves all claims that may have existed under the Settlement Agreement as of this date.

(Case No. 3:19-cv-00628, Doc. No. 160, "the Agreed Order".)[3] The conviction for fighting was ultimately thrown out by the RMSI Warden in February 2025, "[d]ue to several procedural and clerical issues" during the hearing. (Doc. No. 8-1 at 7.)

Plaintiff asserts that, during the roughly two months between his disciplinary conviction for fighting and the entry of the Agreed Order, he was isolated, denied income from his rock-man job, and denied attendance at worship services, educational programming, daily recreation, and group meals. (Doc. No. 1 at 10.) He also alleges that his attack by Carruthers was instigated by RMSI staff as an "act of retaliation for filing grievances." (*Id.* at 9.)

**C. Review of the Amended Complaint**

The Amended Complaint significantly streamlines the case presented in the original Complaint. It narrows the defendants to three (Sweeney, Stevens, and Govan) and claims, in a nutshell, as follows: "Plaintiff Jon Hall was subjected to two separate incidents of retaliatory discipline by [these] officials for exercising his constitutional rights, resulting in wrongful punitive segregation and loss of privileges. Both incidents were later dismissed as baseless by supervisory officials and a federal court, confirming their retaliatory nature." (Doc. No. 12 at 1.) The Amended

[3] The Court can and does take judicial notice of the existence and content of the Agreed Order.

Complaint incorporates by reference the Settlement Agreement in case number 3:19-cv-00628, the Agreed Order, and Warden Nelson's February 2025 dismissal of Plaintiff's fighting conviction. (*Id.* at 3–4.) The Amended Complaint asserts that: the actions of Sweeney, Stevens, and Govan constituted retaliation for the exercise of Plaintiff's constitutional rights in violation of the First Amendment; the punishment imposed ("5 days segregation + 60 days' loss of status") was cruel and unusual in violation of the Eighth Amendment because it was grossly disproportionate to the disciplinary offenses of conviction; and Defendants' actions constituted malicious prosecution and retaliation under Tennessee law. (*Id.* at 4–5.) Plaintiff seeks, among other relief, compensatory and punitive damages for the (alleged) violation of his rights. (*Id.* at 5.)

**D. Analysis**

As a preliminary matter, in motions filed before and after the Amended Complaint (Doc. Nos. 9, 10, 13, 14), Plaintiff has suggested that this case "involves" or "arises from" a breach of contract, *i.e.*, a breach of the Settlement Agreement in Case No. 3:19-cv-00628. But Plaintiff's operative pleading, the Amended Complaint, does not claim breach of contract. Nor would such a claim be proper, given that both incidents complained of occurred before October 1, 2024, the date of the Agreed Order entered by Judge Trauger which memorialized the negotiated resolution of "all claims that may have existed under the Settlement Agreement as of th[at] date." (Case No. 3:19-cv-00628, Doc. No. 160.)

The Court now turns to the claims of the Amended Complaint, keeping in mind the factual background from the original Complaint's allegations.

1. <u>First Amendment retaliation claim</u>

Plaintiff first claims that Defendant Sweeney retaliated against him by filing a false disciplinary charge against him. To plausibly claim retaliation in violation of the First Amendment,

Plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill*, 630 F.3d at 472 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

The disciplinary charge for "threatening an officer" was allegedly filed less than a day after an argument between Plaintiff and Sweeney over her denial of his request to go to the law library, during which Plaintiff said, "You better have a good attorney because you cannot do this." (Doc. No. 12 at 2.) Plaintiff was then placed in punitive segregation pending his disciplinary hearing. (*Id.* at 3.) He was convicted of threatening an officer and sentenced to time served in segregation, but he subsequently won dismissal of the conviction on appeal to the Warden. (*Id.*)[4]

Similar facts were before the Sixth Circuit in *Dean v. Conley*, 198 F.3d 244 (Table), 1999 WL 1045166 (6th Cir. Nov. 9, 1999). The court analyzed them as follows, in the context of reviewing a summary judgment awarded to Conley:

> Dean aver[red] that, as Warden Conley was talking to another prisoner, Dean approached him. Upon seeing Dean, Conley asked, "What's your problem?" Dean replied, "If I have any problems, I'll let the federal courts handle them." Dean then walked away. Dean subsequently was charged and convicted of threatening and intimidating an employee and sentenced to disciplinary segregation.
>
> ***
>
> Dean was engaged in protected conduct in this case. Dean alleges that the disciplinary conviction was in retaliation for his threat to file suit in federal court. A prisoner has a First Amendment right of access to the courts, including the filing of civil rights claims. Further, an adverse action was taken against Dean. Although certain threats or deprivations are so minor that they do not rise to the level of being constitutional violations, solely egregious retaliatory acts alone may be sufficient to defeat a motion for summary judgment, and Dean's placement in segregation is considered a sufficiently adverse action.

[4] The Court notes that this paragraph serves largely as reminder of facts set forth above.

> Lastly, there is a genuine issue of material fact concerning whether a causal connection exists between the adverse action and the protected conduct. The disciplinary reports underlying Dean's conviction note that he moved toward Conley in a threatening manner and made his statement about the federal courts. Although it is not entirely clear from the reports, it appears that Dean was convicted in part because of his assertion of First Amendment rights….

*Id.* at *2. *See also Goodell v. Ervin*, 591 F. Supp. 3d 232, 240–42 (E.D. Mich. 2022) (analogizing to *Dean* and finding that retaliation claim was sufficiently pled where inmate threatened suit and was charged with and convicted of "threatening and intimidating behavior" shortly thereafter) (citing, *e.g.*, *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (reiterating that a threat to sue is protected conduct)).

At this initial stage of review, and based on the authorities cited above, the Court finds that Plaintiff has plausibly alleged that his threat that Sweeney "better have a good attorney" if she was going to deny him access to the law library was protected conduct; that Sweeney's filing of a disciplinary charge concerning this threat to sue, leading to Plaintiff's conviction and segregation, was an adverse action; and that the disciplinary charge was motivated by Plaintiff's threat. The retaliation claim against Sweeney in her individual capacity[5] will proceed for further development.

The retaliation claim against Stevens and Govan, however, fails for lack of any allegation of protected conduct to which the defective disciplinary proceeding was causally connected. The

[5] Sweeney, Stevens, and Govan are sued also in their official capacity. (Doc. No. 12 at 1.) "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, official-capacity claims against officers employed at a TDOC facility such as RMSI are treated as claims against TDOC, which is not a "person" within the meaning of Section 1983, but rather the equivalent to the State of Tennessee for these purposes and therefore not a proper defendant. *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983."); Tenn. Code Ann. § 4-3-101(5) (listing Department of Correction as an administrative department of the state)). Accordingly, the claims against Defendants in their official capacity as "agents of [a] state administrative department[], ... are noncognizable" and will not proceed. *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003).

original Complaint alleged that at the time of his fight with Carruthers, Plaintiff had a pending grievance against mailroom officer Djuana Hodges and knew of "at least a casual friendship relationship" between Carruthers's sister and Hodges. (Doc. No. 1 at 8–9.) Plaintiff thus "believe[d] that the attack was motivated by RMSI staff" in retaliation for filing the grievance against Hodges. (*Id.* at 9.) However, these allegations were not carried forward in the Amended Complaint, and in any event, Plaintiff's belief in a retaliatory motive to "RMSI staff" because of his grievance against Hodges is purely speculative and does not support an inference reasonably drawn with respect to Defendants Stevens and Govan. Presented with the same scenario, the court in *King v. Dingle*, 702 F. Supp. 2d 1049 (D. Minn. 2010), determined as follows:

> Other than King's bare assertion, that the Defendants were part of some conspiracy to retaliate against him for having filed a grievance, King has simply made no showing that any of the actions of the Defendants [involved with his] disciplinary proceedings[] were in any way motivated by a desire to retaliate against him for filing a grievance against [their fellow officer] Corbo. "[B]are allegations of malice on the defendants' part are not enough to establish retaliation claims against them." *Shehee v. Grimes*, 39 Fed. Appx. 127, 129 (6th Cir. 2002), citing *Crawford-El v. Britton*, 523 U.S. 574, 588, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998).

*Id.* at 1081. This resolution is also appropriate in the instant case. Plaintiff's claim of retaliation against Defendants Stevens and Govan will be dismissed.

2. <u>Eighth Amendment claim</u>

Plaintiff claims that his disciplinary punishments in the two cases discussed above—5 days' segregation for threatening an employee and 60 days' loss of "A-level status" for fighting —were grossly disproportionate to the offenses of conviction and therefore amounted to cruel and unusual punishment in violation of the Eighth Amendment. (Doc. No. 12 at 3, 4.) Although the Eighth Amendment does prohibit "penalties that are grossly disproportionate to the offense," *Hutto v. Finney*, 437 U.S. 678, 685 (1978), *superseded by statute on other grounds*, the requirement is "narrow proportionality," not "strict proportionality." *United States v. LaFond*, 692 F. App'x 242,

244 (6th Cir. 2017) (citing *Harmelin v. Michigan*, 501 U.S. 957, 997, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). This proportionality requirement is not offended by an inmate's confinement to pre-hearing segregation for a period of days after being accused of threatening on officer, before ultimately having the conviction overturned by the prison warden. Such punishment cannot be found to be cruel and unusual. *See Ivey v. Wilson*, 832 F.2d 950, 955–56 (6th Cir. 1987) ("Ivey spent nearly two days in confinement in a hospital security cell and in segregation. Three days after Ivey had been released, an adjustment committee chaired by Parker found Ivey guilty on two charges related to the incident. Parker's adjustment committee sentenced Ivey to fifteen days in segregation, but … Warden Parker partially overruled the adjustment committee, and Ivey served none of the fifteen days. On these facts, Parker could not be found to have inflicted any cruel and unusual punishment on Mr. Ivey.").

Nor does a 60-day loss of privileges suffice to implicate Plaintiff's Eighth Amendment rights. This punishment was not grossly disproportionate to the offense of fighting another inmate. Nor do the conditions of the punishment otherwise offend the Eighth Amendment. As the Sixth Circuit explained:

> To move beyond the pleading stage in this setting, an inmate must allege that he has been deprived "of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L.Ed.2d 59 (1981). Alleging that prison conditions "are restrictive and even harsh" does not suffice[,] because such conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*; *see also Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim [under the Eighth Amendment]. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (internal quotation marks and citations omitted).

*Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Plaintiff was not deprived of the minimal civilized measure of life's necessities when he suffered a 60-day loss of privileges that

accompanied his temporary drop from level A to level B due to a fighting conviction, even though that fighting conviction was ultimately overturned. *See Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 240 (E.D.N.Y. 2023) (finding that Eighth Amendment was not violated by punishment of sixty days in disciplinary segregation and loss of recreation, package, phone, and commissary privileges, even though conviction was eventually set aside, because those punishments were "not uses of force or unnecessary and wanton inflictions of pain[,] [n]or are they deprivations of basic human needs," but "[r]ather . . . are routine conditions of confinement") (citations and internal quotation marks omitted); *see also Harrison v. Lewis*, 124 F.3d 197 (Table), 1997 WL 468334, at *1–2 (6th Cir. Aug. 13, 1997) (finding that "a sixty day assignment to the restricted wing and a loss of some other privileges," including movement from legal aide job to library worker job, as a result of a disciplinary conviction did not present conditions of confinement "sufficiently grave" to violate Eighth Amendment). "[E]xtreme deprivations are required" to plausibly claim that prison conditions amount to cruel and unusual punishment, *Hudson*, 503 U.S. at 9, and none are alleged here. Accordingly, Plaintiff's Eighth Amendment claim will be dismissed.

3. <u>State law claims</u>

At this early stage, the Court will allow Plaintiff's state law claim of malicious prosecution—for "initiat[ing] baseless disciplinary proceedings without probable cause" (Doc. No. 12 at 5)—to proceed against Defendants Sweeney, Stevens, and Govan in their individual capacities.

Under Tennessee law, "[t]o state a claim for malicious prosecution, a plaintiff must show that the defendant (1) instituted a proceeding against him 'without probable cause,' (2) 'with malice,' and (3) that the proceeding 'terminated in the plaintiff's favor.'" *Mynatt v. Nat'l Treasury*

*Emps. Union, Chapter 39*, 669 S.W.3d 741, 746 (Tenn. 2023) (quoting *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005), *overruled on other grounds by Himmelfarb v. Allain*, 380 S.W.3d 35 (Tenn. 2012)). These elements may reasonably be inferred from the Amended Complaint's allegations (construed liberally and in Plaintiff's favor) that: (1) all three Defendants filed "false" or "fabricated" incident reports charging Plaintiff with disciplinary violations, when Sweeney knew that Plaintiff's statement threatening legal action if he was kept from going to the law library did not support her "threatening an officer" charge, and Stevens and Govan knew of but "ignored" the requirement of contacting Plaintiff's guardian ad litem before proceeding against him, and (2) Plaintiff was exonerated when the acting Warden of RMSI sustained his appeal of the threatening-an-officer conviction and the fighting conviction was overturned and the charge dismissed due to "several procedural and clerical issues" with the hearing. (Doc. No. 12 at 2–4; Doc. No. 8-1 at 7.) The malicious prosecution claim will proceed for further development against Defendants Sweeney, Stevens, and Govan.

However, Plaintiff's claim of retaliation under Tennessee Code Annotated § 4-21-301 will be dismissed, inasmuch as that statute applies only to retaliation for "oppos[ing] a discriminatory practice," or because the subject "made a charge, filed a complaint, testified, assisted or participated in" a proceeding related to discrimination under the Tennessee Human Rights Act. Tenn. Code Ann. § 4-21-301; *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 453 (Tenn. Ct. App. 2015) (stating that "grievances that are not related to discrimination cannot be the basis of a retaliation claim under the THRA"). Although the original Complaint refers to Plaintiff as an "ADA prisoner," neither it nor the Amended Complaint presents grounds for inferring that any action taken against Plaintiff was taken because he complained about discrimination or was involved in a proceeding related to discrimination.

## II. CONCLUSION

As explained above, Plaintiff's claim under the First Amendment will proceed against Defendant Sweeney, and his supplemental state law claim for malicious prosecution will proceed against Defendants Sweeney, Stevens, and Govan.[6] Plaintiff's First Amendment claim against Stevens and Govan, his Eighth Amendment claim, and his supplemental state law claim for retaliation are all **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b)(ii), for failure to state a claim upon which relief may be granted.

All other defendants listed on the electronic docket of this case, having been named in the original Complaint but not in the Amended Complaint, are **DISMISSED** from this action, and the Clerk shall terminate each of them as a party to this action.

Plaintiff's Motion to Appoint Counsel (Doc. No. 13), whereby he seeks reappointment of the attorneys who represented him in Case No. 3:19-cv-00628, is **DENIED WITHOUT PREJUDICE** at this stage of the proceedings, given the nature of Plaintiff's claims and the cogency of his pleadings compared to those he filed pro se in his prior case.[7] Nevertheless, the Clerk is **DIRECTED** to forward an information copy of this Order to attorney William L. Harbison of Sherrard, Roe, Voigt & Harbison, PLC, 1600 West End Avenue, Suite 1750, Nashville, TN 37203.

In view of this Order's explanation of the status of this case, Plaintiff's Motion to Ascertain Status (Doc. No. 14) is **GRANTED**.

---

[6] The Court's determination that the Amended Complaint states colorable claims for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

[7] *See* Case No. 3:19-cv-00628, Doc. No. 7 at 3 (appointing counsel after describing disjointed nature of Plaintiff's pro se complaint and the seriousness of his potentially viable claims).

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of Defendants Sweeney, Stevens, and Govan. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of this Order's entry on the docket. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendant. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE